**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 24-1086
_____

UNITED STATES OF AMERICA

v.

GLENN LONG
a/k/a
BLESS
a/k/a
MAX,
    Appellant

_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 1:22-cr-00078-001)
District Judge:  Honorable Noel L. Hillman
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
March 27, 2025
_____

Before:  BIBAS, PHIPPS, and AMBRO, *Circuit Judges*

(Filed: April 8, 2025)
_____

OPINION[*]
_____

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

PHIPPS, *Circuit Judge*.

A criminal defendant who pleaded guilty to one count of conspiracy to distribute and possess with intent to distribute methamphetamine and fentanyl was sentenced to 216 months' imprisonment. Although that sentence was based on a significant downward variance, the defendant now contends that it was imposed in error. He argues that his sentence incorrectly accounted for the purity of the methamphetamine at issue; that he was not an organizer or leader of a conspiracy of five or more persons; and that denying him a more significant downward variance was unreasonable. None of those arguments have legal merit, and for the reasons below, we will affirm the sentence.

## I. BACKGROUND

In February 2022, a federal grand jury in Camden, New Jersey, returned an indictment against Glenn Long. *See* 18 U.S.C. § 3231. As amended, the indictment charged Long with six counts related to the operation of a drug trafficking conspiracy. Under the terms of an agreement that he entered into with the Government, Long pleaded guilty to one count of conspiracy to distribute methamphetamine and fentanyl, and he stipulated that the conspiracy possessed approximately 2,759 grams of a substance that was 98% pure methamphetamine, as well as more than 400 grams of mixtures and substances containing fentanyl. *See* 21 U.S.C. § 846. In return, the Government agreed to drop the remaining five charges, but it did not promise to recommend any particular sentence.

Based on Long's Category IV criminal history and a total offense level of 37 (which included a three-point reduction for accepting responsibility, *see* U.S. Sent'g Guidelines Manual § 3E1.1(b) (U.S. Sent'g Comm'n 2024)), his recommended sentence was 292 to 365 months. Under the Sentencing Guidelines, Long's offense level would have been four points lower if it had not been possible to determine the amount of actual

2

methamphetamine in the drugs attributed to the conspiracy, *see* U.S. Sent'g Guidelines Manual § 2D1.1(c)(4), but based on the stipulations as to the drug weight of 2,759 grams and drug purity of 98%, the amount of actual methamphetamine was calculable, *see id.* § 2D1.1(c)(2). *Compare id.* Note (A) to the Drug Quantity Table, *with id.* Note (B) to the Drug Quantity Table. Long's recommended sentence was also based on an upward adjustment for being an organizer or leader of a conspiracy of five or more persons, and without that adjustment, his offense level would have been four points lower. *See id.* § 3B1.1(a). If Long's offense level had been reduced by four points on either ground, then his Guidelines range would have been 188 to 235 months, and with both four-point reductions, his Guidelines range would have been 121 to 151 months. *See id.* ch. 5, pt. A., Sent'g Table.

At sentencing, Long argued against the application of both the actual methamphetamine formula and the organizer-leader adjustment. He also sought a downward variance to avoid a disparity with the sentences that his coconspirators received. *See* 18 U.S.C. § 3553(a)(6). The District Court denied both attempts to reduce the offense level by four points. But in consideration of the factors set forth at 18 U.S.C. § 3553(a), it varied downward from the 292-to-365-month Guidelines range and imposed a prison sentence of 216 months.

Unsatisfied with that outcome, Long invoked this Court's appellate jurisdiction by filing a notice of appeal. *See* 28 U.S.C. § 1291; 18 U.S.C. § 3742(a). He now argues that the District Court erred in rejecting each of his arguments in favor of a lower sentence.

## II. DISCUSSION

None of Long's challenges have merit.

3

As to his argument that he should not have been sentenced based on the purity of methamphetamine, the Sentencing Guidelines use a Drug Quantity Table to determine a defendant's base offense level. *See* U.S. Sent'g Guidelines Manual § 2D1.1(a)(5) (directing the use of the Drug Quantity Table to determine the base offense level); *id.* § 2D1.1(c) (the Drug Quantity Table). According to that Table, having at least 1.5 but less than 4.5 kilograms of "[m]ethamphetamine (actual)"[1] or having a converted drug weight of at least 30,000 but less than 90,000 kilograms results in a base offense level of 36. *Id.* § 2D1.1(c)(2). Under the first method, the amount of actual methamphetamine attributable to the conspiracy – 2,759 grams of a substance multiplied by 98% – is at least 1.5 but less than 4.5 kilograms. *See id.* § 2D1.1(c), Note (B) to the Drug Quantity Table. And under the second method, a conversion rate of twenty kilograms per gram of actual methamphetamine and 2.5 kilograms per gram of fentanyl attributable to the conspiracy produces a drug weight of at least 30,000 but less than 90,000 kilograms. *See id.* § 2D1.1 cmt. n.8(D). Instead of using those methods, Long argues that the purity of the methamphetamine attributed to the conspiracy should have been disregarded, which would have reduced the base offense level by four points. *See id.* § 2D1.1(c)(4); *cf. id.* § 2D1.1(c)(2) & Note (B) to the Drug Quantity Table. But other than a policy disagreement with the Guidelines – a claim that using the purity ratio is anachronistic for today's drug markets – Long provides no reason for using a diluted drug weight. Accordingly, the District Court did not abuse its discretion in setting Long's base offense level at 36.[2]

---

[1] Note (B) to the Drug Quantity Table defines "Methamphetamine (actual)" as "the weight of the controlled substance, itself, contained in the mixture or substance." U.S. Sent'g Guidelines Manual § 2D1.1(c), Note (B) to the Drug Quantity Table.

[2] This result holds with or without affording weight to the conversion table in the commentary to the Guidelines because even without a conversion, the amount of actual methamphetamine attributable to the conspiracy qualifies for a base offense level of 36. *Cf. United States v. Nasir*, 17 F.4th 459, 471 (3d Cir. 2021) (en banc) (evaluating

4

Long also challenges the application of the organizer-leader adjustment. *See id.* § 3B1.1(a); *United States v. Adair*, 38 F.4th 341, 354 (3d Cir. 2022) (defining the terms 'organizer' and 'leader'). He argues that because he had substantially the same role as two of the other members in the conspiracy, he could not have been an organizer or leader. But there is no such rule of law. To the contrary, there can be multiple organizers or leaders of a conspiracy – even one consisting of fewer than five people. *See Adair*, 38 F.4th at 351–52 (citing U.S. Sent'g Guidelines Manual § 3B1.1(a)). As an alternative, Long contends that he did not organize or lead at least five of the members in the conspiracy. Again, that is not a requirement for the adjustment – only that the conspiracy have five or more participants or be "otherwise extensive." U.S. Sent'g Guidelines Manual § 3B1.1(a); *see United States v. Helbling*, 209 F.3d 226, 248 (3d Cir. 2000) (explaining that the defendant counts as one of the five participants, thereby demonstrating that an organizer-or-leader relationship with five participants is not required). Thus, Long provides no basis for a "definite and firm conviction that a mistake has been committed" in the application of this upward adjustment. *United States v. Denmark*, 13 F.4th 315, 317 (3d Cir. 2021) (quoting *United States v. Napolitan*, 762 F.3d 297, 307 (3d Cir. 2014)).

Long also claims that it is impermissible double counting to calculate the base offense level using the purity of the methamphetamine and then to adjust upward for the organizer-leader classification. As he sees it, accounting for the purity of the methamphetamine is a means of punishing persons at the highest level of a drug conspiracy, as is the organizer-leader adjustment. That contention, even if substantiated factually, does not help him because "double counting is permissible so long as the Guidelines do not explicitly prohibit simultaneous application of the provisions in question," and neither of

Guidelines commentary under the deference standard in *Kisor v. Wilkie*, 588 U.S. 558 (2019)).

the relevant Guidelines prevent the application of the other. *United States v. Seibert*, 971 F.3d 396, 400 (3d Cir. 2020), *amended by* 991 F.3d 1313 (3d Cir. 2021); *cf.* U.S. Sent'g Guidelines Manual § 2D1.1; *id.* § 3B1.1.

Finally, Long attacks the reasonableness of his sentence. He renews his policy argument against the pure methamphetamine ratio, and he contends that his sentence created an unwarranted disparity in comparison to his coconspirators as well as to other defendants convicted of drug offenses who have not been sentenced pursuant to the ratio. But there was no procedural shortcoming in the imposition of the sentence. The District Court gave due consideration to Long's disparity and pure-meth-ratio arguments in favor of a variance. Nor were more individualized findings necessary with respect to Long's knowledge of the scope of the conspiracy: he stipulated that he could reasonably foresee that 2,759 grams of 98% pure methamphetamine was possessed by and within the scope of the conspiracy. And substantively, the District Court accounted for those concerns by granting a downward variance of at least 76 months. Therefore, Long has failed to establish that no reasonable sentencing court would have imposed the same below-Guidelines sentence for the reasons given by the District Court. *See United States v. Lacerda*, 958 F.3d 196, 215 (3d Cir. 2020).

### III. CONCLUSION

For the above reasons, we will affirm Long's sentence.